OPINION
{¶ 1} Defendant-appellant, Joseph Randall Feltner, appeals the decision of the Butler County Court of Common Pleas convicting him of murder and abduction. We affirm the decision of the trial court.
 {¶ 2} On December 5, 2006, appellant was indicted for one count of murder as a result of committing a felonious assault, in violation of R.C. 2903.02(B), and one count of *Page 2 
abduction, a third-degree felony, in violation of R.C. 2905.02(A)(2).
 {¶ 3} On November 1, 2006, appellant's 80-year-old grandfather, Douglas Smith, Jr., met appellant at a storage unit in order to bring appellant some dinner, as he had often done.[1] At some point during the visit, appellant attacked his grandfather, threw him to the ground, and forcefully kicked or stomped his head. Thinking that he had killed his grandfather, appellant left the storage unit to walk around and "cool off." As Smith began to recover from the initial assault, appellant returned to the storage unit and "smacked" his grandfather in the face. Appellant then took his grandfather inside the storage unit, sat him down in a chair, took away his cell phone and closed the door behind him. Appellant walked to a nearby business to wash the blood from his hands and then returned to the storage unit, where he proceeded to push his grandfather into the unit's corrugated metal wall. Eventually the attack ceased and Smith was able to return to his home, though still suffering from his injuries.
 {¶ 4} Three days later, Smith was found collapsed and unconscious on his bathroom floor. He was taken to the emergency room at Mercy Hospital Fairfield where he was examined by Dr. Gregory Hall, who found signs of trauma and bruising to Smith's head.[2] Based on a CAT scan, Dr. Hall determined that Smith's condition was serious due to "bleeding on the brain." Dr. Hall transferred Smith to the intensive care unit at the University Hospital at Cincinnati, however Smith never regained consciousness and died approximately three weeks later. A subsequent autopsy revealed that Smith's death was "caused by hypoxic encephalopathy due to intracranial bleeding due to blunt impact to the head." The *Page 3 
medical examiner, Dr. Michael Kenny, further opined that the death was a homicide because there was a "subdural hemorrhage" consistent with "inflicted cranial cerebral injury" that increased swelling and irritation which in turn led to poor oxygenation within the brain.
 {¶ 5} In the interim, the Hamilton Police Department began an investigation into the cause of Smith's injuries. Appellant made an initial statement, after acknowledging and waiving his Miranda rights, which provided little, if any, details regarding what happened to his grandfather. The police then obtained a search warrant for the storage unit, in which they found what later proved to be blood from appellant and his grandfather. The police also went to see Smith at University Hospital and took pictures of his still visible injuries.
 {¶ 6} On November 6, 2006, appellant voluntarily approached the police, and after again waiving his Miranda rights, made a recorded statement detailing the attack against his grandfather at the storage unit. Appellant was transported to the Fairfield Police Department where he was booked and charged.[3]
 {¶ 7} On November 9, 2007, after a two-day bench trial, the common pleas court found appellant guilty of both murder and abduction.[4]
Appellant was sentenced to 15 years to life and a $10,000 fine for the murder, and five years for the abduction to be served consecutively. Appellant filed a timely notice of appeal, alleging one assignment of error.
 {¶ 8} "THE TRIAL COURT ERRED IN DENYING THE DEFENDANT'S MOTION FOR ACQUITTAL, PURSUANT TO CRIMINAL RULE 29(A), ON THE CHARGE OF FELONY-MURDER IN VIOLATION OF R.C. § 2903.02(B)."
 {¶ 9} Appellant argues the trial court erred when it denied his motion for acquittal *Page 4 
because the state failed to prove the element of proximate cause.
 {¶ 10} Pursuant to Crim. R. 29(A), "[t]he court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged * * *, if the evidence is insufficient to sustain a conviction of such offense or offenses." The purpose of a motion for acquittal is to "test the sufficiency of the evidence presented at trial." State v. Terry, Fayette App. No. CA2001-07-012, 2002-Ohio-4378, ¶ 9 citing State v. Williams, 74 Ohio St.3d 569, 576, 1996-Ohio-91;State v. Miley (1996), 114 Ohio App.3d 738, 742. Therefore, "a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." State v. Bridgeman (1978), 55 Ohio St.2d 261, paragraph one of the syllabus. The trial court's decision must be made by construing the evidence in a light most favorable to the state. Terry at ¶ 9, citingBridgeman at 263.
 {¶ 11} On review, "an appellate court `will not reverse the trial court's judgment unless reasonable minds could only reach the conclusion that the evidence failed to prove all elements of the crime beyond a reasonable doubt.'" State v. Adams, Butler App. No. CA2006-07-160, 2007-Ohio-2583, ¶ 19, quoting Miley at 742. We need only find that there was legally sufficient evidence to sustain the guilty verdict. See,State v. Thompkins, 78 Ohio St. 3d 380, 386, 1997-Ohio-52. "[W]hen reviewing the sufficiency of the evidence to support a criminal conviction * * * [an appellate court must] examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt * * * whether, after viewing the evidence in a light most favorable to the state, any rationale trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v.Gomez-Silva, Butler App. No. CA2000-11-230, 2001-Ohio-8649, at 11 citingState v. Jenks (1991), *Page 5 61 Ohio St.3d 260 at paragraph two of the syllabus (superseded by state constitutional amendment on other grounds in State v. Smith, 80 Ohio St.3d 89,1997-Ohio-355).
 {¶ 12} The crux of appellant's argument is that the state failed to prove appellant proximately caused the death of his grandfather.[5]
The element of proximate cause is satisfied where the defendant, "sets in motion a sequence of events that make the death of another a `direct, proximate, and reasonably inevitable' consequence." State v.Lovelace (1999), 137 Ohio App.3d 206, 215, quoting State v.Chambers (1977), 53 Ohio App.2d 266, 272-73.[6]
 {¶ 13} "Generally, for a criminal defendant's conduct to be the proximate cause of a certain result, it must first be determined that the conduct was the cause in fact of the result, meaning that the result would not have occurred `but for' the conduct. Second, when the result varied from the harmed intended or hazarded, it must be determined that the result achieved was not so extraordinary or surprising that it would be simply unfair to hold the defendant criminally responsible for something so unforeseeable." Id. at 216, citing LaFave Scott, Criminal Law (1972), Section 35, 246.
 {¶ 14} Appellant inflicted serious injury to Smith's head and face which led to his collapse three days later, and a diagnosis in the emergency room of bleeding on the brain. From Smith's autopsy, Dr. Kenny determined that intracranial bleeding from head trauma was the cause of death. There is nothing extraordinary or surprising about the manner of Smith's death in relation to appellant's actions. Appellant beat an 80-year-old man to the point that even he believed his grandfather was dead. It cannot be considered surprising or *Page 6 
extraordinary that Smith later died considering the severity of the injuries he received at the hands of his grandson.
 {¶ 15} Appellant argues that the true cause of death was a secondary bleed that only occurs in one out of five or six cases of subdural hematomas, and further suggests that a 17-20 percent chance of this happening is not a basis for finding proximate cause beyond a reasonable doubt. Appellant also postulates that the bleeding was caused by Smith's collapse in his bathroom prior to being taken to the hospital. We find no merit to either argument. While Dr. Kenny did say the supplementary bleeding was an "additional insult," he also testified that it was "not a factor, which would have in and of itself been required for the death of Mr. Smith." In addition, Dr. Kenny's testimony regarding the percentage of cases in which subdural hematomas lead to secondary bleeding was in response to defense counsel's question about treatment to prevent such an occurrence, and predictability. Dr. Kenny later clarified his statement by noting that bleeding on a subdural is "common" and "may be found * * * [or] thought to be a part of whatever injured the veins and caused the subdural, also causing injury to the brain itself causing the bleed." Dr. Kenny then reiterated his final conclusion that a traumatic impact occurred. In addition, this negates the idea that Smith's death was due to a mere fall in the bathroom, as does the fact that there were no new bruises or injuries noted by Dr. Hall when Smith was admitted to the emergency room.
 {¶ 16} The evidence in the record, when viewed in a light most favorable to the state, is legally sufficient to support a finding that appellant's actions were the proximate cause of his grandfather's death in that but for the beating, Smith would not have died. Furthermore, the medical examiner noted that additional bleeding was common and not something surprising or extraordinary. Therefore, because there was sufficient evidence to support the proximate cause element, we find that the trial court properly denied appellant's motion for acquittal. Appellant's assignment of error is hereby overruled. *Page 7 
 {¶ 17} Judgment affirmed.
BRESSLER, P.J. and POWELL, J., concur.
[1] Appellant said he stored personal items in the storage unit, including a punching bag which he used as part of an exercise regime.
[2] Dr. Hall testified the bruising was not really black and blue, instead it was turning a, "yellowish-green color, meaning that the injuries were probably at least a couple or a few days old."
[3] Before arraignment, appellant filed a plea of not guilty by reason of insanity and filed a motion of incompetence to stand trial. The court ordered an examination and evaluation of appellant's mental condition and found him incompetent to stand trial and remanded him to the Summit Behavior Center for treatment. A review was conducted a few months later which found appellant competent to stand trial. The trial was initially set for August 8, 2007, but after several postponements, eventually took place in November 2007.
[4] While appellant initially requested a jury trial, he waived his right to a jury trial in favor of a bench trial.
[5] R.C. 2903.02(B) states that, "[n]o person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree."
[6] While Lovelace was a case of involuntary manslaughter rather than murder, we find the definition of proximate cause to be equally applicable. *Page 1