[Cite as *State v. Klotz*, 2024-Ohio-2864.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## LAKE COUNTY

| | |
|---|---|
| STATE OF OHIO,<br><br>Plaintiff-Appellee,<br><br>- vs -<br><br>LEON L. KLOTZ,<br><br>Defendant-Appellant. | CASE NO. 2023-L-111<br><br>Criminal Appeal from the<br>Court of Common Pleas<br><br>Trial Court No. 2022 CR 001139 |

# O P I N I O N

Decided: July 29, 2024
Judgment: Affirmed

*Charles E. Coulson*, Lake County Prosecutor, and *Teri R. Daniel*, Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Edward M. Heindel*, 2200 Terminal Tower, 50 Public Square, Cleveland, OH 44113 (For Defendant-Appellant).

MATT LYNCH, J.

{¶1}    Defendant-appellant, Leon L. Klotz, appeals from his convictions in the Lake County Court of Common Pleas relating to a motor vehicle accident. For the following reasons, we affirm the judgment of the lower court.

{¶2}    On March 21, 2023, Klotz was indicted by the Lake County Grand Jury for Tampering With Records, a felony of the third degree, in violation of R.C. 2913.42(A)(1); Falsification, a misdemeanor of the first degree, in violation of R.C. 2921.13(A)(5); Driving Under Suspension, an unclassified misdemeanor, in violation of R.C. 4510.16(A); two

speed limit violations, minor misdemeanors, in violation of R.C. 4511.21(A) and (D)(5); Operation Without Reasonable Control, a minor misdemeanor, in violation of R.C. 4511.202(A); Vehicular Manslaughter, a misdemeanor of the first degree, in violation of R.C. 2903.06(A)(4); and Vehicular Homicide, a felony of the fourth degree, in violation of R.C. 2903.06(A)(3)(a).

{¶3}   A bench trial was held on September 12-13 and 26, 2023.  The following pertinent testimony and evidence were presented:

{¶4}   On August 26, 2022, Klotz purchased a used 2008 Dodge Ram truck from JE Autoworks, a used car dealership, for approximately $3,000.  Josh Egeland, the owner of JE Autoworks, testified that he had purchased the truck from a dealership, test drove it, and was not aware of any problems with the operability of the truck.  According to James Lothman, a car salesman at JE, when Klotz arrived to purchase the car around 4:30 p.m., he did not wish to test drive it.  Lothman requested that he do so and Klotz drove the truck down the street by the dealership, traveling at approximately 50 m.p.h.

{¶5}   At around 4:45 to 5:00 p.m. on that date, two witnesses observed Klotz driving the Dodge Ram on I-90 eastbound, the relevant portion of which had a speed limit of 70 m.p.h.  Anne Selleny observed the truck ahead of her move abruptly to the right lane, quickly back into the left lane, then to the right again before it went perpendicular to the road, travelled across the median, and hit a vehicle.  She believed the driver was in a hurry and was trying to get around a steady flow of traffic, given the abrupt nature of his movements.  Her 911 call was played during which she told the dispatcher, "it was definitely the pickup's fault.  He was driving crazy.  Going down 90, trying to get around cars and whatever happened he shot [across] the median."

2

{¶6} Laura Jones was also traveling on I-90 eastbound, at a speed of around 65 m.p.h., in the right-hand lane. She saw the truck approach to her left and pass by "very quickly." She believed it was coming up so fast it may hit the vehicle in front of it and she began to pull to the shoulder. She saw the back of the truck move from side to side and begin to spin before crossing over the median and hitting a vehicle.

{¶7} A 911 call made by Klotz was played, during which he indicated that he had just purchased the truck and "something went wrong with it and it took me, flew across the road on me and hit this lady and she's hurt."

{¶8} Sergeant Ryan Fox, a crash reconstructionist supervisor for the Ohio Highway Patrol, indicated that the tire marks showed that Klotz had at some point travelled outside of the right lane of travel toward the right berm, returned to the right lane, travelled across the left lane, and through the median, entering the westbound lanes and striking a Chevrolet Aveo. Sergeant Evan Mace, an assistant post commander with the Highway Patrol, characterized the vehicle as "out of control," evidenced by the tire markings going sideways across the roadway.

{¶9} Mace indicated that there were no adverse weather conditions on the date of the accident. No field sobriety tests were conducted and the investigation did not indicate Klotz was distracted while driving. Following the accident, Mace observed that Klotz's truck had lost one tire, and the tire pressure on the remaining tires was 42 and 44 PSI on the two front tires and 28 PSI on the back tire.

{¶10} Highway Patrol Sergeant Jeremy Kindler testified that the driver of the Aveo hit by Klotz, Kathryn Wise, was pronounced dead at the scene. A cell phone call made by Klotz while in the police cruiser following the accident was played in which he indicated

3

"something happened to the truck" and he had not been speeding. In his statement to the troopers, Klotz stated that a witness told him she saw "the driveshaft fall out from underneath the truck" and Klotz indicated, "I think it pole-vaulted me, like the end came up off the ground." He stated he was driving around 65 or 70 m.p.h. and there was "no response" from the steering but he may have over-steered. Klotz stated that the tire pressure sensor had come on while he was driving.

{¶11} James Drozdowski, a crash reconstructionist with Introtech Accident Reconstruction, examined Klotz's vehicle to determine whether a mechanical failure caused the crash. He testified that although the truck suffered damage in the crash, his inspection did not reveal a mechanical failure which would have caused a loss of control of the vehicle. He found no defect in the control arm, which controls steering, and the lack of certain damage to the drivetrain indicated it became broken from the accident.

{¶12} Vincent Cronin, lead investigator with Introtech, discussed the circumstances of the crash and concluded that "[t]he proximate cause of this crash in my opinion was Mr. Klotz failing to maintain control of his vehicle." He calculated that Klotz was travelling approximately 83 m.p.h. preceding the loss of control. He indicated that the tire that came with the truck would have been rated "P," a passenger vehicle tire, but the tires at the time of the crash were larger, and were "LT," light truck tires. Because the tires were larger than the recommended size, this would have caused the speedometer to read 79 m.p.h. rather than 83 m.p.h. Cronin testified that raising the vehicle with larger tires could affect stability when turning quickly. It could also make the vehicle more difficult to control "in an over-steering situation." He indicated that low pressure in a tire could contribute to a loss of control in driving a vehicle.

4

{¶13} Matt Reesh, an investigator with the Ohio Bureau of Motor Vehicles, testified that, at the time of the accident, Klotz had a suspended driver's license due to failure to have insurance.

{¶14} The trial court found Klotz guilty of each of the counts as charged in the indictment. At the sentencing hearing, the court ordered Klotz to serve consecutive prison terms of nine months for Tampering With Records and 18 months for Vehicular Homicide, for an aggregate prison term of 27 months and merged the remaining offenses.

{¶15} Klotz timely appeals and raises the following assignments of error:

{¶16} "[1.] Klotz was denied his right to the effective assistance of counsel.

{¶17} "[2.] The convictions were not supported by sufficient evidence.

{¶18} "[3.] The convictions were against the manifest weight of the evidence."

{¶19} In his first assignment of error, Klotz argues that it was ineffective assistance for defense counsel not to consult and hire an accident reconstruction expert given his defense that the vehicle experienced a sudden mechanical failure causing him to lose control.

{¶20} To demonstrate ineffective assistance of counsel, a defendant must prove "(1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome of the proceeding." *State v. Madrigal*, 87 Ohio St.3d 378, 388-389 (2000), citing *Strickland v. Washington*, 466 U.S. 668, 687-688 (1984). "To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *State v.*

5

*Bradley*, 42 Ohio St.3d 136 (1989), paragraph three of the syllabus.

{¶21} It has been consistently held that "the failure to call an expert and instead rely on cross-examination does not constitute ineffective assistance of counsel." *State v. Nicholas*, 66 Ohio St.3d 431, 436 (1993), citing *State v. Thompson*, 33 Ohio St.3d 1, 10-11 (1987); *State v. Wilks*, 2018-Ohio-1562, ¶ 200; *State v. Mallory*, 2021-Ohio-1542, ¶ 42 (11th Dist.). Arguments of ineffectiveness for failure to obtain expert witnesses have been rejected where there is a failure to identify which expert witnesses should have been called or what they would have said, since such an argument is merely speculative. *State v. Hunter*, 2011-Ohio-6524, ¶ 66; *see State v. Bunch*, 2022-Ohio-4723, ¶ 36 (the failure to call an expert was not ineffective assistance because the courts cannot consider evidence outside the record and are limited to "mere speculation"). Further, counsel may find obtaining such a witness could ultimately be unfavorable to the client, a decision which is a matter of trial strategy. *State v. Mallory*, 2021-Ohio-1542, ¶ 43 (11th Dist.) (rejecting ineffective assistance claim where it was argued an expert should have been obtained to review DNA data but there was "no indication in the record that defense counsel . . . found the state's DNA evidence to be lacking or that the results of further DNA analysis would have been favorable to the defense").

{¶22} A review of the record reveals that defense counsel adopted the strategy of arguing that Klotz was not negligent in operating the vehicle because it was new to him and "the tires on the vehicle are too big for th[e] truck" which could render the vehicle unstable and also result in an inaccurate speedometer reading. These arguments were advanced in opening and closing arguments. Counsel elicited testimony from Cronin on this topic during cross-examination. Given that there were multiple experts who examined

6

the circumstances, with one outlining in detail the lack of a mechanical failure and another indicating that the accident was due to Klotz's failure to maintain control of the vehicle, it appears counsel chose this issue to focus on as a matter of trial strategy. It is possible that defense counsel determined there would be no benefit to retaining an expert who may have reached the same conclusions as the prosecutor's witnesses.

{¶23} *State v. Smith*, 2000 WL 1876660 (11th Dist. Dec. 22, 2000), cited by Klotz, held that trial counsel was not ineffective by failing to present an accident reconstruction report. The court concluded that the focus of the defense was to show that appellant was not driving under the influence of cocaine, and, thus, there was "little reason to question the accident reconstruction theory." *Id.* at *7. Similarly, here, counsel primarily advanced a defense relating to the tires, supported in part by testimony elicited through cross-examination, rather than any mechanical failures of the vehicle. Nonetheless, even if this were not the case, *Smith* does not dispute the general proposition that the decision whether to hire an expert is a matter of trial strategy and restates this principle. *Id.* at *6. Further, *Smith* observed that the defendant suggested no evidence to alert counsel "that the prosecution's accident reconstruction reports were vulnerable." *Id.* at *7. Similarly, here we do not conclude that defense counsel was ineffective in determining that disputing the conclusion on the mechanics of the truck would have been unsuccessful.

{¶24} The first assignment of error is without merit.

{¶25} In his second assignment of error, Klotz argues that his convictions were not supported by sufficient evidence since the State "failed to prove the proximate cause of death for the victim." In his third assignment of error, the substance of Klotz's argument is as follows: "Again, the State did not present any evidence regarding the proximate

7

cause of this crash. This mandates a finding that the conviction was against the manifest weight of the evidence." We will address these assignments of error jointly since they are interrelated.

{¶26} In reviewing the sufficiency of the evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶27} Whereas "sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, . . . weight of the evidence addresses the evidence's effect of inducing belief." *State v. Wilson*, 2007-Ohio-2202, ¶ 25, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386-387 (1997). "[A] reviewing court asks whose evidence is more persuasive—the state's or the defendant's?" *Id.* An appellate court must consider all the evidence in the record, the reasonable inferences, the credibility of the witnesses, and whether, "in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." (Citation omitted.) *Thompkins* at 387. "Since there must be sufficient evidence to take a case to the jury, it follows that 'a finding that a conviction is supported by the weight of the evidence necessarily must include a finding of sufficiency.'" (Citation omitted.) *State v. Barnes*, 2023-Ohio-353, ¶ 43 (11th Dist.).

{¶28} While Klotz challenges his "convictions" in a general sense, the substance of his argument relates to the convictions for Vehicular Homicide and/or Vehicular

8

Manslaughter. He references R.C. 2903.06 as the "vehicular homicide statute" but cites only language from R.C. 2903.06(A)(4), which gave rise to a conviction for Vehicular Manslaughter. He does not specifically challenge whether the state proved negligence to sustain a conviction for Vehicular Homicide under R.C. 2903.06(A)(3)(a) but instead whether he caused the victim's death.

{¶29} Pursuant to R.C. 2903.06, "[n]o person, while operating or participating in the operation of a motor vehicle . . . shall cause the death of another" either "[n]egligently" (Vehicular Homicide) or "[a]s the proximate result of committing a violation of any provision of any section contained in Title XLV of the Revised Code that is a minor misdemeanor or of a municipal ordinance that . . . is substantially equivalent to any provision of any section contained in Title XLV of the Revised Code that is a minor misdemeanor" (Vehicular Manslaughter). R.C. 2903.06(A)(3)(a) and (4). "It is well established that the definition of 'cause' in criminal cases is identical to the definition of 'proximate cause' in civil cases. . . . The general rule is that a defendant's conduct is the proximate cause of injury or death to another if the defendant's conduct (1) is a 'substantial factor' in bringing about the harm and (2) there is no other rule of law relieving the defendant of liability." (Citations omitted.) *State v. Naylor*, 2024-Ohio-1648, ¶ 51 (11th Dist.).

{¶30} Klotz argues in his sufficiency assignment that the State failed to establish the cause of the victim's death. In his manifest weight assignment, he contends that the State failed to prove "the proximate cause of th[e] crash." It appears he is intending to reiterate his sufficiency argument in the context of a manifest weight argument regarding whether the accident caused the victim's death. In the interest of justice, we will address

9

both the cause of death and the cause of the crash.

{¶31} Klotz contends that the State failed to present adequate evidence of the cause or manner of death, particularly due to its failure to have a coroner or medical professional testify to this issue: "It may seem unreasonable to argue that the crash did not cause the death of Ms. Wise. Yet, that is the burden of proof that the State shoulders. The State should present some evidence that the accident actually caused the death. Having a Sargent read a death certificate does not carry that burden because the Sargent has no personal knowledge; he is merely reading a piece of paper."

{¶32} Klotz fails to provide authority requiring a coroner or other medical professional's testimony to establish a cause of death in this type of case. In his argument, he cites *State v. Galvin*, 2016-Ohio-5404 (8th Dist.) and *State v. Carter*, 2007-Ohio-5570 (2d Dist.), which provide examples of cases where a medical examiner or forensic pathologist presented testimony regarding a cause of death. Neither case, however, rules on or addresses the issue of whether such testimony is necessary. Evidence of a defendant's cause of death can be established through direct and circumstantial evidence tending to demonstrate to the finder of fact the cause of the victim's death. *See State v. Beaver*, 119 Ohio App.3d 385, 393 (11th Dist. 1997) (observing that circumstantial evidence allowed the jury to infer the shooting was the cause of death and that "[e]xpert medical evidence is not necessary in cases where the injuries are severe enough that the jury can infer that the injuries caused the death"); *State v. Musgrave*, 2000 WL 502688, *11-12 (5th Dist. Apr. 24, 2000) (circumstantial evidence can be used to establish the cause of death).

{¶33} The death certificate and autopsy report were admitted as records for the

10

court's consideration to demonstrate the cause of death. They indicate that the victim died from blunt impact to the head, trunk and extremities with visceral, vascular, and skeletal injuries and the manner of death was accidental. While it is accurate that there was no testimony provided to elaborate on these findings and they were discussed only in the testimony of Sergeant Kindler, in which he agreed that the cause of death was determined to be a result of injuries from the accident, Klotz stipulated to the authenticity and admissibility of these exhibits and they constituted admissible evidence to demonstrate the cause of death. "The effect of the stipulation is that the exhibit is evidence in the case." *In re T.W.*, 2021-Ohio-3037, ¶ 29 (8th Dist.). Further, autopsy reports are nontestimonial and, thus, may be admitted without the testimony of a medical examiner. *State v. Craig*, 2006-Ohio-4571, ¶ 73-88.

{¶34} Further, there was additional evidence showing that the accident was the cause of the victim's death. In Klotz's 911 call, he indicated that he hit her vehicle, she was hurt, she needed to be "extricated" from the vehicle, she was "moving every now and then, but she doesn't seem to be conscious," and requested that emergency services "hurry." Jones, one of the witnesses, expressed the impact of the incident, stating in her 911 call, "I'm certain the driver of the small car is hurt" and testified that, "I saw it hit so hard all I could think of was there's no way that person is okay." The dash camera video included a conversation in which Klotz inquired about whether the victim died and was advised that she had. There was no evidence to demonstrate that the victim died from any cause other than the accident that occurred and she was pronounced dead at the scene. The convictions were not against the weight of the evidence and, thus, were also supported by sufficient evidence.

11

**{¶35}** To the extent that Klotz stated that there was a lack of evidence to demonstrate "proximate cause of this crash," no argument is presented in support of such conclusion. Nonetheless, we observe that testimony was presented from several witnesses that the crash resulted when Klotz's vehicle spun out of control and crossed the median. Cronin's testimony demonstrated that Klotz was speeding, which can make a driver more likely to lose control. Jones also testified regarding the fact that Klotz was driving "quickly" and Selleny testified regarding the manner in which he was quickly moving from lane to lane. It was not against the weight of the evidence to determine that speeding and/or failure to control the vehicle resulted in the accident and the victim's death.

**{¶36}** The second and third assignments of error are without merit.

**{¶37}** For the foregoing reasons, Klotz's convictions in the Lake County Court of Common Pleas are affirmed. Costs to be taxed against appellant.

EUGENE A. LUCCI, P.J.,

JOHN J. EKLUND, J.,

concur.

Case No. 2023-L-111